```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

ANTONIO FLORES,

              Plaintiff,                ORDER
                                        15-CV-1410 (KAM) (SMG)
     -against-

FOOD EXRPESS REGO PARK, INC.;
FOOD EXPRESS WHITESTONE, INC.;
FOOD EXPRESS BRONX, INC.;
HARIS AJAZSYED; and
ERUM FATIMA

              Defendant.
-----------------------------------x
```
**KIYO A. MATSUMOTO, United States District Judge:**

On March 18, 2015, plaintiff Antonio Flores ("plaintiff") initiated this action alleging, inter alia, violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against defendants Food Express Rego Park, Inc., Food Express Whitestone, Inc., Food Express Bronx, Inc., Haris Ajazsyed, and Erum Fatima ("defendants"). (ECF No. 1, Complaint ("Compl.").) On January 4, 2016, the parties notified the court that a settlement had been reached. (ECF No. 32, Letter Regarding Settlement.)

Under the FLSA, parties cannot privately settle claims with prejudice without the approval of a district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) ("Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the

approval of the district court or the DOL to take effect.") . The parties must satisfy the court that their agreement is "fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Where, as here, a proposed FLSA settlement includes the payment of attorneys' fees, the court must also consider the reasonableness of the fee award. *See Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) ("The Court must also separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined.").

Accordingly, on January 18, 2016, the parties filed a joint letter motion seeking court approval of their proposed settlement agreement ("Agreement"). (*See* ECF No. 33, Letter Requesting Fairness Finding.) Under the proposed Agreement (*id.*, Ex. 1), defendants would pay a total of $17,500 to resolve plaintiff's claims. (*Id.*) This total includes payment of $10,437.75 to plaintiff (in two installments) and payment of $7,062.25 to plaintiff's counsel for attorneys' fees and costs related to this action. (*Id.*) The court initially sought more information about the Agreement in a January 19, 2016 order directing the plaintiff to supplement the motion with the following additional information, including:

2

1) A further explanation of why the plaintiff's personal recovery fell below the estimate provided in plaintiff's response (ECF No. 28) to defendant's request for a pre-motion conference seeking dismissal of the action (ECF No. 27.)

2) Support for plaintiff's request for approval of attorneys' fees, including contemporaneous time records for all of plaintiff's attorneys, as required by the Second Circuit. *See, e.g.*, *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997).

On January 26, 2016, plaintiff filed a supplemental submission including an estimate of the plaintiff's unpaid wages from September 2013 through March 2015. (ECF No. 34, Ex. 1.) Taking into account defendants' records, plaintiff's total unpaid wages during that period total $18,730.85. (*Id.; see also* ECF No. 34, Letter by Antonio Flores ("1/26/16 Letter").) By contrast, using plaintiff's "best recollections," the full value of the claim was approximately $45,000. (1/26/16 Letter; ECF No. 28, Ex. 1.) Plaintiff's counsel represented the documents disclosed during discovery would "negate the reasonableness of the inference to be drawn from the employee's evidence," *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946), and that he faced possible collectability problems in the event of a judgment. (1/26/16 Letter.)

The supplemental submission also attached

3

contemporaneous attorney time records detailing the time expended and work completed by plaintiff's counsel (ECF No. 34, Exs. 2-3) as well as receipts detailing plaintiff's costs in litigation this action. (ECF No. 34, Ex. 4.) The supplemental records indicate that plaintiff's counsel spent 64.6 hours on this case, resulting in attorneys' fees totaling $5,218.87, based on a requested hourly rate of $400 per hour for most of Mr. Cafaro's work and $250 per hour for Mr. Kumar. (1/26/16 Letter; *id.*, Exs. 2-3.) Total costs incurred litigating the action were $1,843.38. (ECF No. 34, Ex. 4.)

Based on a detailed review of the Agreement and the plaintiff's counsel's supplemental submission, the court concludes that the settlement is the product of arm's-length negotiations and — with limited exceptions to be discussed below — is a fair and reasonable result given the nature and scope of plaintiff's claims, particularly in light of the risks and expenses presented by moving forward with the litigation. The court's sole concerns relate to: 1) the Agreement's release in paragraph five; 2) the future employment waiver in paragraph eight; and 3) the plaintiff's attorney's fees and costs.

First, as to the release, the court finds that it is unduly broad. For example, one sentence in paragraph five of the agreement reads as follows: "Plaintiff will not file any administrative or judicial complaints, charges, lawsuits, claims,

4

demands or actions of any kind against any Defendant." (ECF No. 33, Ex. 1, at ¶ 5.) Another sentence reads: "Plaintiff further agrees to waive his right to recover any monetary damages in any charge or lawsuit filed by himself or by any Plaintiff or by anyone else on his behalf." (*Id.*) The release is approved only to the extent that it releases claims arising from essentially the same set of facts and circumstances alleged in the complaint.

Second, the court has reservations about the future employment waiver. (*See* ECF No. 33, Ex. 1, at ¶ 8 ("Plaintiff further voluntarily and unequivocally acknowledges and agrees that by entering into this Agreement, he voluntarily and knowingly waives any and all rights to re-employment with Defendants . . . .") Such a waiver is in some tension with the broad remedial purposes of the FLSA. *See Cheeks*, 796 F.3d at 207. However, because plaintiff has represented that defendants only have one remaining restaurant (*see* 1/26/16 Letter), the waiver's impact on plaintiff's future career opportunities is not substantial. Therefore, the court approves of this component of the Agreement.

Finally, the court turns to the issue of fees and costs. With respect to fees, a court may calculate a reasonable attorneys' fee either by determining the so-called "lodestar" amount or by awarding a percentage of the settlement. *See McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). Under the lodestar

method, the court must determine the lodestar, "the product of a reasonable hourly rate and the reasonable number of hours required by the case — [which] creates a presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks and citation omitted). "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (internal quotation marks and citation omitted). The court may also first consider "case-specific factors to estimate a reasonable rate for an attorney's services, which is then multiplied by the number of hours worked," which is otherwise known as the *Arbor Hill* methodology. *McDaniel*, 595 F.3d at 422.

The court applies the *Arbor Hill* methodology and first determines the reasonable hourly rate that a "reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008). Generally those rates are the hourly rates in "the district in which the court sits" for "similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232, 233 (2d Cir. 2006) (internal quotation

6

marks and citations omitted). As this case is an FLSA class action, "the reasonable rate should reflect the rates awarded in FLSA cases in this district." *Encalada v. Baybridge Enters. Ltd.*, No. 14-CV-3113, 2014 WL 4374495, at *1 (E.D.N.Y. Sept. 2, 2014). "[T]he court may adjust the hourly rate based on the complexity and risk of the litigation, the quality of the attorneys, or public policy considerations." *Marshall v. Deutsche Post DHL*, No. 13-CV-1471, 2015 WL 5560541, at *8 (E.D.N.Y. Sept. 21, 2015).

The prevailing rate for FLSA cases in this district for partners ranges from $300 to $400. *Hui Luo v. L & S Acupuncture, P.C.*, No. 14-CV-1003, 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015); *see also Flores v. Mamma Lombardi's of Holbrook, Inc.*, No. 12-CV-3532, 2015 WL 2374515, at *19 (E.D.N.Y. May 18, 2015) (awarding $350 for a senior partner); *Lema v. Mugs Ale House Bar*, No. 12-CV-2182, 2014 WL 1230010, at *6 (E.D.N.Y. Mar. 21, 2014) (awarding rates of $300 to $350 for partners); *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015) (prevailing hourly rates for partners range from $300 to $400); *Fawzy v. Gendy*, No. 12-CV-5580, 2013 WL 5537128, at *1 (E.D.N.Y. Oct. 6, 2013) (hourly rates range from $200 to $350 for partners); *Jean v. Auto & Tire Spot Corp.*, No. 09-CV-5394, 2013 WL 2322834, at *6 (E.D.N.Y. May 28, 2013) (rates for "experienced attorneys handling FLSA cases . . . usually range from $300 to $400 per hour").

7

By contrast, "[j]unior associates generally command $100 to $150 dollars per hour." *Hui Luo*, 2015 WL 1954468, at *2 (internal quotation marks, modifications and citations omitted); *see also Flores*, 2015 WL 2374515, at *19 (awarding $200 for junior partners and associates); *Griffin v. Astro Moving & Storage Co. Inc.*, No. 11-CV-1844, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (reasonable hourly rates are $200 to $325 for senior associates, and $100 to $200 for junior associates); *Lema*, 2014 WL 1230010, at *6 (awarding rates of $125 to $225 for associates).

Given Mr. Cafaro's experience, as detailed in his letter to the court (*see* 1/26/16 Letter), and given the cases cited above detailing partner rates, the court concludes that $400 per hour is reasonable. As to Mr. Kumar, the court concludes that a rate of $250 exceeds the prevailing rates in this district. In this case, the court finds that Mr. Kumar's experience — he graduated law school in 2012 and has been employed in Mr. Cafaro's firm since 2013 — merits $200 per hour.

"The second part of the modified lodestar method is determining the reasonable number of hours expended by plaintiffs' counsel in this litigation." *Marshall*, 2015 WL 5560541, at *11. A close look at the contemporaneous records reveals that a significant amount of time billed by Mr. Cafaro involved tasks unrelated to the actual litigating of this case. (ECF No. 34, Ex. 2.) For example, Mr. Cafaro billed a not-insubstantial amount of

8

travel time for a single-plaintiff case that involved no significant motion practice: over four hours billed at $200 per hour, with one 1.2-hour travel period billed at $400 because of contemporaneous work preparing Mr. Flores for a settlement conference. (*Id.*) A "district court has the authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application." *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (internal quotation marks and citation omitted). The court concludes that a 15% cut in the total number of hours is equitable in this case. Ultimately, then, the court reduces Mr. Cafaro's hours by 15% and, as discussed above, reduces Mr. Kumar's hourly rate to $200 from $250.

The court must superimpose these alterations on the ultimate attorneys' fee share, which bears no relation to the lodestar calculation arrived at by the plaintiff's attorneys. The plaintiff's attorneys assumed a rate of $400 for Mr. Cafaro for 22.6 hours, a rate of $200 for Mr. Cafaro for 4.7 hours (while he was in travel status and not engaging in contemporaneous work), and a rate of $250 for Mr. Kumar for 37.3 hours of work. This yielded $9,980 for Mr. Cafaro and $9,325 for Mr. Kumar, for a total of $19,305. The attorney's fees awarded as part of the Agreement constitute 27.03% of that number, or $5,218.87.

The court will first calculate the impact of the alterations using the fee numbers provided by plaintiff's

9

attorneys; the court will then award plaintiff's attorneys 27.03% of that number, since this was the apparent ratio contemplated by the attorneys in the settlement. First, with respect to Mr. Cafaro, assuming the 15% reduction applies equally to Mr. Cafaro's 22.6 hours billed at $400 and to the 4.7 hours he billed at $200, his total would be $8,483. Second, multiplying Mr. Kumar's 37.3 hours by $200 per hour yields $7,460. This brings the firm's adjusted total take to $15,943. 27.03% of that number is $4,309.39. This constitutes a reduction of $909.48 from the $5,218.87 in fees contemplated in the Agreement.

With respect to costs, the court concludes that nearly all of the $1,843.38 in costs are justified by the information provided in Exhibit 4 of the plaintiff's supplemental submission. However, the court finds that the $23.25 in litigation support costs and the $59.88 in financing fees are insufficiently specific to permit the court to award those costs. Consequently, costs of $1,760.25 are awarded to the plaintiff's attorneys. This constitutes a reduction of $83.13 from the costs contemplated in the Agreement.

The court will not, however, disturb the total award contemplated by the Agreement. The amount reduced from the plaintiff's attorney's fees and costs will instead be shifted to the plaintiff's recovery. Consequently, the $909.48 left from the reduction in fees shall be disbursed to Mr. Flores (instead of to

10

Mr. Cafaro's firm) on February 1, 2016, in addition to the $6,906.62 to be provided to Mr. Flores that day. Similarly, on April 1, 2016, defendants shall remit the $83.13 (deducted from plaintiff's counsel's proposed costs) to Mr. Flores (alongside the $3,531.13 to be paid to Mr. Flores on that day), instead of providing that sum to Mr. Cafaro's firm on May 1, 2016. This does not meaningfully disrupt the payment schedule negotiated by the parties.

It is worth drawing attention to the fact that the attorneys' fees in this case, inclusive of costs, constituted approximately 40 percent of the total settlement recovery. Courts have often rejected settlement agreements that provide for fees in that range. *See, e.g.*, Opinion and Order, *Martinez v. Gulluoglu LLC*, No. 15-cv-2727 (S.D.N.Y. Jan. 15, 2016), ECF No. 27 ("Barring unusual circumstances not present here, courts in this District have declined to award fees constituting more than one-third of the total settlement amount in an FLSA action." (collecting cases)). The court's modifications bring that number down to approximately 35 percent.

Accordingly, with the aforementioned exceptions, the Agreement is approved and the court dismisses this case with prejudice while retaining jurisdiction for the purpose of enforcing the Agreement. The parties shall abide by all terms of the Agreement that were adopted in this order. The Clerk of Court

11

is respectfully directed to terminate this action.

**SO ORDERED.**

Dated:     February 1, 2016
           Brooklyn, New York

                                    _____/s/_____
                                    **KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York